## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN KEITH,                         :
                                      :
              Plaintiff               :        No. 3:14-CV-00107
                                      :
       vs.                            :        (Judge Nealon)
                                      :
CAROLYN W. COLVIN, ACTING             :
COMMISSIONER OF SOCIAL                :                **FILED**
SECURITY,                             :             **SCRANTON**
                                      :
              Defendant               :           NOV 2 0 2014
                                      :
         **MEMORANDUM**                        PER _____
                                                    DEPUTY CLERK

## BACKGROUND

On January 22, 2014, Plaintiff, Steven Keith, filed this instant appeal[1] under

42 U.S.C. § 405(g) for review of the decision of the Commissioner of the Social

Security Administration ("SSA") denying her application for disability insurance

benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 1461 et seq., 1381 et

seq. (Doc. 1). The parties have fully briefed the appeal, and the matter is now ripe

for review. For the reasons set forth below, the decision of the Commissioner

denying Plaintiff's applications for DIB and SSI be vacated.

---

1. Under the Local Rules of Court "[a] civil action brought to review a decision of
the Social Security Administration denying a claim for social security disability
benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

## BACKGROUND

Plaintiff protectively filed[2] his applications for DIB and SSI on September 29, 2010. (Tr. 34, 67-68, 119-127, 146).[3]  On January 20, 2011, the Bureau of Disability Determination[4] ("BDD") denied Plaintiff's applications. (Tr. 34, 69-77).  On February 11, 2011, Plaintiff requested a hearing before an administrative law judge. (Tr. 34, 80-81).  An administrative hearing was held on January 19, 2012, before administrative law judge Richard Zack ("ALJ"), at which Plaintiff and vocational expert Michelle Georgio ("VE") testified. (Tr. 34, 46-65).  On July 10, 2012, the ALJ issued a decision denying Plaintiff's applications. (Tr. 34-42). On September 6, 2012, Plaintiff requested that the Appeals Council review the administrative law judge's decision, and on November 22, 2013, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 1-4, 23-24).  Thus, the ALJ's decision stood as the final decision of the Commissioner.

Plaintiff filed the instant complaint on January 22, 2014.  (Doc. 1).  On March 24, 2014, Defendant filed an answer and transcript from the SSA proceedings. (Docs. 11 and 12).  On June 12, 2014, Plaintiff filed a brief in

---

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

3. References to "(Tr._)" are to pages of the administrative record filed by the Defendant as part of the Answer on March 24, 2014.

4. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for DIB and SSI on behalf of the SSA.

support of his complaint. (Doc. 15). On July 17, 2014, Defendant filed a brief in opposition. (Doc. 16). Plaintiff filed a reply brief on August 4, 2014. (Doc. 17).

Plaintiff was born in the United States on May 15, 1965, and at all times relevant to this matter was considered a "younger individual."[5] (Tr. 51). Plaintiff withdrew from school in or about 1983 after completing the 11th grade. (Tr. 51, 123, 146, 175, 229). During his primary and secondary education, Plaintiff attended special education classes and received poor academic marks. (Tr. 51, 230). After withdrawing from school, Plaintiff did not obtain a General Equivalency Diploma, and he never obtained a driver's license. (Tr. 52, 230).

Plaintiff's employment records indicate he worked as a warehousemen, dishwasher, busboy, and laborer through temporary employment agencies. (Tr. 51, 154, 175, 230). SSA records reveal that Plaintiff had earnings in the years 1985 through 1991, 1993 through 1995, and 1997 through 2010. (Tr. 51, 154, 175, 230). Plaintiff's annual earning only amounted to substantial gainful activity in 1986, 2004 and 2005 when he earned $6,012.02, $12,295.53 and 15,216.99,

---

5. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). "Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2." 20 C.F.R. §§ 404.1563(c).

respectively.[6] (Tr. 51, 154, 175, 230).  Plaintiff's total reported earnings during

those twenty-five (25) years was $86,321.18.  (Tr. 51, 154, 175, 230).

Plaintiff claims that he became disabled on December 31, 2007, because of

both physical and mental impairments.  He alleges that he suffers from

schizoaffective disorder, major depressive disorder, extremely low intellectual

functioning, a history of substance abuse, and low back pain.  (Tr. 174); (Doc. 15,

pp. 2-3).

## MEDICAL RECORDS

From September 17 to September 22, 2010, Plaintiff was hospitalized due to

auditory hallucinations, suicidal thoughts, and a depressed mood at the First

Hospital Wyoming Valley, located in Kingston, Pennsylvania.  (Tr. 202-206, 266,

269).  Plaintiff reported that for three (3) months, he was hearing voices directing

him to cut his wrist and telling him that people were after him.  (Tr. 204).  Alcohol

and drug screening was negative.  (Tr. 270-271).  Plaintiff reported a history of

alcohol and drug abuse, but denied any such abuse since a prior hospitalization in

2003.  (Tr. 204).  A mental status examination performed on the date of admission

to the hospital revealed that Plaintiff was alert and oriented to person, place and

time; his speech was clear and coherent; his mood was pleasant; his affect

---

6. Pursuant to Federal Regulations, a person's earnings have to rise to a certain
level to be considered substantial gainful activity.  The official website of the
Social Security Administration reveals that in 1986 the amount was $300 per
month ($3600 per year); in 2004 the amount was $810 per month ($9720 per
year); and in 2005 the amount was $830 per month ($9960 per year). Substantial
Gainful Activity, http://www.ssa.gov/OACT/COLA/sga.html (Last accessed
November 18, 2014).

constricted; his thoughts showed evidence of ongoing auditory hallucinations; his

judgment, insight and contact with reality was moderately impaired; his general

fund of knowledge was fair; and his memory for three objects was good. (Tr.

205). The diagnostic assessment was that Plaintiff suffered from schizoaffective

disorder with psychotic features, and he was given a Global Assessment of

Functioning (GAF)[7] score of thirty-five (35). (Tr. 205). Plaintiff underwent

---

7. The GAF score, on a scale of 1-100, allows a clinician to indicate his judgment
of a person's overall psychological, social and occupational functioning, in order
to assess the person's mental health illness. American Psychiatric Association
(2000). Diagnostic and Statistical Manual of Mental Disorders (4th ed., text rev.).
Washington, DC: Author. A GAF score is set within a particular range if either
the symptom severity or the level of functioning falls within that range. Id. The
score is useful in planning treatment and predicting outcomes. Id. The GAF
rating is the single value that best reflects the individual's overall functioning at
the time of examination. The rating, however, has two components: (1) symptom
severity and (2) social and occupational functioning. The GAF is within a
particular range if either the symptom severity or the social and occupational level
of functioning falls within that range. When the individual's symptom severity
and functioning level are discordant, the GAF rating reflects the worse of the two.
Thus, a suicidal patient who is gainfully employed would have a GAF rating
below 20. A GAF score of 21-30 represents behavior considerably influenced by
delusions or hallucinations or serious impairment in communication or judgment
or inability to function in almost all areas. Id. A GAF score of 31-40 represents
some impairment in reality testing or communication or major impairment in
several areas, such as work or school, family relations, judgment, thinking or
mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious
impairment in social, occupational or school functioning. Id. A GAF score of 51
to 60 represents moderate symptoms or any moderate difficulty in social,
occupational, or school functioning. Id. A GAF score of 61-70 indicates some
mild symptoms or some difficulty in social, occupational, or school functioning.
Id.

Recently, the American Psychiatric Association no longer uses the GAF
score for assessment of mental disorders due to concerns about subjectivity in
application and a lack of clarity in the symptoms to be analyzed. Solock v. Astrue,
2014 U.S. Dist. LEXIS 81809, *14-16 (M.D. Pa. June 17, 2014) (citing Ladd v.
Astrue, 2014 U.S. Dist. LEXIS 67781 (E.D. Pa. May 16, 2014)); See Am.

psychotherapy and was treated with the antipsychotic drug Invega. (Tr. 202).
Plaintiff's condition stabilized, and at the time of discharge, his hallucinations
were under control, his depressed mood had improved, and he exhibited no
evidence of a thought disorder or mood fluctuations. (Tr. 202). The discharge
diagnosis was psychotic disorder, not otherwise specified, and depressive disorder,
not otherwise specified. (Tr. 202). Plaintiff was prescribed Invega at the time of
discharge, and it was noted that his prognosis was fair to good with treatment. (Tr.
203).

Plaintiff had appointments at Behavioral Health Services of Wyoming
Valley on September 28, October 1 and 26, and December 7, 2010. (Tr. 211, 215,
217-222). The records of these appointments reveal that Plaintiff continued to
report depression, anxiety, and mood swings. (Tr. 211, 215, 217-222). It was also
reported that he suffered from paranoia and racing thoughts. (Tr. 211, 215, 217-
222). Plaintiff continued to be treated with Invega, and in October of 2010, he
was also prescribed the antidepressant Celexa. (Tr. 211, 215, 217-222). The
diagnostic assessment at the beginning of December, 2010, was that Plaintiff
suffered from psychotic disorder, not otherwise specified; depressive disorder, not
otherwise specified; and borderline intellectual functioning. (Tr. 217).

---

Psychiatric Assoc., Diagnostic and Statistic Manual of Mental Disorders 5d, 16
(2013). As a result, the SSA permits ALJs to use the GAF score as opinion
evidence when analyzing disability claims involving mental disorders; however, a
"GAF score is never dispositive of impairment severity," and the ALJ, therefore,
should not "give controlling weight to a GAF from a treating source unless it is
well[-]supported and not inconsistent with other evidence." SSA AM-13066 at 5
(July 13, 2013).

On December 21, 2010, Plaintiff was evaluated by Stephen Timchack, Psy.D., on behalf of the BDD. (Tr. 225-234). After conducting a clinical interview, a mental status examination, and intelligence testing, Dr. Timchack concluded that Plaintiff suffered from schizoaffective disorder, and gave Plaintiff a GAF score of fifty (50). (Tr. 225-234). Dr. Timchack found that Plaintiff had marked limitations in his ability to understand, remember, and carry out detailed instructions, and marked limitations in his ability to make judgments on simple work-related decisions and to respond appropriately to work pressures in a usual work setting and changes in a routine work setting. (Tr. 225). Dr. Timchack also found that Plaintiff had moderate limitations in his ability to understand, remember and carry out short, simple instructions, and to interact appropriately with the public, supervisors and coworkers. (Tr. 225). The intelligence testing performed by Dr. Timchack revealed that Plaintiff had a Full Scale IQ score of forty-nine (49), which Dr. Timchack noted placed Plaintiff "in the extremely low range of overall intellectual functioning." (Tr. 230). Dr. Timchack stated that Plaintiff's prognosis was poor. (Tr. 234). Dr. Timchack noted that Plaintiff "is struggling with severe and persistent mental illness coupled with diminished intellectual capacity" and that he "is likely to require ongoing care and intervention throughout the remainder of his life." (Tr. 234). Dr. Timchack concluded that "[a]t this juncture there is limited evidence to suggest [Plaintiff will] be able to manage his personal funds adequately, and although he is living independently, he enjoys the ongoing supervision of a case manager." (Tr. 234).

Plaintiff had appointments at Behavioral Health Services of Wyoming Valley on January 3 and 17, 2011. (Tr. 384-385). The records of these appointments reveal that Plaintiff had improved, but that he still reported experiencing mild depression, anxiety, and racing thoughts. (Tr. 384-385). The diagnosis remained the same, but the prescription for Invega was discontinued and the antipsychotic Risperdal was added to the medication regimen. (Tr. 384-385).

On January 19, 2011, Francis Murphy, Ph.D., reviewed Plaintiff's file on behalf of the BDD, and opined that Plaintiff only had moderate mental functional limitations and could engage in the basic mental demands of competitive work. (Tr. 245-247). Dr. Murphy did not examine Plaintiff, and there is no indication what records Dr. Murphy reviewed other than Dr. Timchack's report, the records of a 2003 psychiatric hospitalization, and the December 7, 2010 appointment Plaintiff had at Behavioral Health Services of Wyoming Valley. (Tr. 247, 261). Dr. Murphy opined that Dr. Timchack's conclusions were inconsistent with the totality of the evidence and were based on an isolated examination of Plaintiff. (Tr. 247). He further stated that Dr. Timchack overestimated the severity of Plaintiff's functional limitations. (Tr. 247). Dr. Murphy did not dispute or comment on the results of the intelligence testing performed by Dr. Timchack other than stating that he questioned the validity of the test results because the records of Plaintiff's 2003 psychiatric hospitalization did not mention borderline intellectual functioning or mental retardation and because of Plaintiff's work

8

history and his activities of daily living, including preparing meals, housecleaning and shopping. (Tr. 261).

Plaintiff had an appointment at Behavioral Health Services of Wyoming Valley on February 21, 2011. (Tr. 382). The record of that appointment reveals that Plaintiff had some paranoid delusions and racing thoughts. (Tr. 382). The diagnostic assessment was that Plaintiff suffered from psychotic disorder, not otherwise specified; depressive disorder, not otherwise specified; and borderline intellectual functioning. (Tr. 382). Plaintiff was continued on Risperdal and Celexa, and the antipsychotic Abilify was added to the medication regimen. (Tr. 382).

On March 8, 2011, Plaintiff visited the emergency department of the Wyoming Valley Health Care System complaining of auditory hallucinations. (Tr. 306). A mental status examination revealed that Plaintiff was oriented to person, place and time; his affect was flat and his insight poor; his memory was normal; his concentration was poor; and he had no suicidal or homicidal ideations. (Tr. 308). A urine drug screen was negative. (Tr. 310). Plaintiff's blood plasma alcohol level was .081 percent.[8] (Tr. 310). The diagnostic assessment was that Plaintiff suffered from schizophrenia. (Tr. 309). The record of this visit indicates that Plaintiff was admitted to First Hospital, but a review of the administrative record did not reveal the records of that hospitalization and the next record that is encountered is a record of an appointment Plaintiff had on March 16, 2001, at

---

8. The legal limit in Pennsylvania is .08 percent. 75 Pa.C.S.A. § 3731.

Behavioral Health Services of Wyoming Valley. (Tr. 383). At that appointment Plaintiff denied suffering from depression, anxiety and hallucinations. (Tr. 383). It was noted under the mental status examination findings that Plaintiff suffered from paranoia which would come and goes. (Tr. 383). The diagnostic assessment was that Plaintiff suffered from schizoeffective disorder and borderline intellectual functioning. (Tr. 383). Plaintiff was continued on the medications Risperdal and Celexa. (Tr. 383).

On April 7, May 5, June 2, July 22, and September 16, 2011, Plaintiff had appointments at Behavioral Health Services of Wyoming Valley. (Tr. 377-381). The records of these appointments reveal that Plaintiff was doing well, and his condition was controlled with medications. (Tr. 377-381). The results of mental status examinations were essentially normal during his time. (Tr. 377-381). The diagnostic assessment remained the same: schizoaffective disorder and borderline intellectual functioning. (Tr. 377-381). Plaintiff was prescribed Risperdal and Celexa. (Tr. 377-381).

On September 23, 2011, Plaintiff visited the emergency department of the Wyoming Valley Health Care System requesting admission to a detoxification program. (Tr. 284-289). Plaintiff reported drinking fifteen (15) beers, denied drug abuse, denied auditory or visual hallucinations, and denied suicidal or homicidal ideations. (Tr. 284-286). A urine drug screen tested positive for cocaine. (Tr. 290). At the time of discharge, the diagnosis was alcohol dependence, and Plaintiff was advised to followup with his primary care physician. (Tr. 287-288).

10

On November 11, 2011, and January 10 and March 2, 2012, Plaintiff had appointments at Behavioral Health Services of Wyoming Valley. (Tr. 373, 375-376). The records of these appointments reveal that Plaintiff was doing well and his condition was controlled with medications. (Tr. 373, 375-376). The results of mental status examinations were essentially normal during his time. (Tr. 373, 375-376). The diagnostic assessment remained the same: schizoaffective disorder and borderline intellectual functioning. (Tr. 373, 375-376). Plaintiff was given GAF scores in the range of fifty-one (51) to sixty (60), which represented moderate limitations. (Tr. 373, 375-376). Plaintiff was prescribed the antipsychotic drug Seroquel. (Tr. 373, 375-376).

**STANDARD OF REVIEW**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by

those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340

U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive DIB and SSI, the plaintiff must demonstrate he/she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905 (defining disability). Further,

> an individual shall be determined to be under a disability only
> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he would be
> hired if he applied for work. For purposes of the preceding
> sentence (with respect to any individual), "work which exists in
> the national economy" means work which exists in significant
> numbers either in the region where such individual lives or in
> several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step process in evaluating disability and claims for disability insurance benefits. See 20 C.F.R. § 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe[9] or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the RFC to return to his or her past work and (5) if not, whether he or she can adjust to other work in the national economy. 20 C.F.R. § 416.920. "The claimant bears the ultimate burden of establishing steps one through four." Poulos, 474 F.3d at 92, citing Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004). "At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]. " Id.

As part of step four, when a claimant's impairment does not meet or equal a listed impairment, the Commissioner will assess the RFC. See 20 C.F.R. §

---

9. An impairment is severe if it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921.

416.920. RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The RFC assessment must include a discussion of the individual's abilities. <u>Id.</u>; 20 C.F.R. §§ 404.1545 and 416.945; <u>Hartranft</u>, 181 F.3d at 359 n.1 ("'[RFC]' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

Using the RFC assessment, the Commissioner will determine whether the claimant can still perform past relevant work, or can make an adjustment to other work. <u>Id.</u> If so, the claimant is not disabled; and if not, he is disabled. <u>Id.</u> "The claimant bears the ultimate burden of establishing steps one through four." <u>Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 92 (3d Cir. 2007) (citing <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 550 (3d Cir. 2004)). "At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]." <u>Id.</u>

**ALJ DECISION**

Initially, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. (Tr. 36). At step one, the ALJ

found that Plaintiff had not engaged in substantial gainful work activity from her onset date of December 31, 2007. (Tr. 36).

At step two, the ALJ determined that Plaintiff suffered from the severe[10] combination of impairments of the following: "schizoaffective disorder, major depressive disorder, history of substance abuse and low back pain/lumbago (20 C.F.R. 404.1520(c) and 416.920(c))." (Tr. 36).

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 37).

At step four, the ALJ determined that Plaintiff had RFC to perform light work as defined in 20 CFR § 404.1567(b),

> [E]xcept that [Plaintiff] could lift and carry 20 pounds occasionally, 10 pounds frequently. He could sit and stand/ walk for 6 hours in an 8-hour workday. [Plaintiff] had no exertional limitations and was able to perform all levels of exertional activities until recently, when he said his back went out. [Plaintiff] is limited to simple, routine work that involves

---

10. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

only making simple work decisions.

(Tr. 38).  In consideration of Plaintiff's RFC, the ALJ determined Plaintiff was unable to perform any past relevant work.  (Tr. 40).

At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed "in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a))."  (Tr. 41).

The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time between the onset date of December 31, 2007, and the date of the ALJ's decision.  (Tr. 42).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ erred (1) when he failed to appropriately evaluate whether or not Plaintiff met the requirements of Listing 12.05, Intellectual disability; (2) when he improperly assigned little weight to Dr. Timchack's opinion; and (3) when he failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the vocational expert.  (Doc. 15, pp. 5-14).  Defendant disputes these contentions.  (Doc. 16, pp. 9-21).  Plaintiff's first argument has substantial merit, and the case will be remanded the case to the Commissioner for further proceedings on that basis.

In addressing step 3 of the sequential evaluation process, the ALJ reviewed several listings, but did not review Listing 12.05B, which states as follows:

> 12.05 Intellectual disability: Intellectual disability
> refers to significantly subaverage general intellectual

17

functioning with deficits in adaptive functioning
initially manifested during the developmental period;
i.e., the evidence demonstrates or supports onset of the
impairment before age 22.
The required level of severity for this disorder is met
when the requirements in . . B . . . are satisfied.

        B. A valid verbal, performance, or full scale IQ of
        59 or less[.]

Deficits in adaptive functioning can include limitations in areas such as

communication, self-care, home living, social skills, and functional academic skills.

See Jackson v. Astrue, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (citing Atkins v.

Virginia, 536 U.S. 304, 309 n.3 (2002)).  In the Third Circuit Court of Appeals, a

plaintiff need only produce evidence that demonstrates or supports onset of the

impairment before age twenty-two (22).  Cortes v. Commissioner of Social Sec., 255

Fed. Appx. 646, 652-653 (3d Cir. 2007).  This requirement can be satisfied by

evidence indicating that the plaintiff was placed in special education classes, dropped

out of school, never obtained a GED, or had a limited work history.  Markle v.

Barnhart, 324 F.3d 182, 188-189 (3d Cir. 2003); see also Sorter v. Astrue, 389 Fed.

Appx. 620, 622 (9th Cir. 2010)(participation in special education classes demonstrated

low intellectual functioning prior to age twenty-two (22)).

      It is incumbent upon an administrative law judge to address the appropriate

listing and explain why a claimant did not meet the criteria of the listing.  Burnett v.

Commissioner of Social Sec. Admin., 220 F. 3d 112, 120 (3d Cir. 2000).  A mere

conclusory statement that a claimant's condition does not meet a listing is "beyond

meaningful judicial review."  Id.  Furthermore, the administrative law judge is

required to "fully develop the record and explain his findings at step three, including an analysis of whether and why [the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." Id. It is reversible error when an administrative law judge fails to address the appropriate listing and provides only a superficial analysis. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004).

In the present case, the ALJ's entire discussion of the evidence relating to Plaintiff's Full Scale IQ score of forty-nine (49) was as follows: "Dr. Timchack administered the Wechler Adult Intelligence Scale with a full scale IQ of 49, placing the claimant in the low range of intellectual functioning. Dr. Timchack felt that the testing results were valid." (Tr. 39). The ALJ did not address the requirements of Listing 12.05B. The ALJ did not indicate what weight he placed on Dr. Timchack's IQ testing, did not point to conflicting test results, and did not make a finding that the test results were invalid. Furthermore, the ALJ did not address whether or not Plaintiff had deficits in adaptive functioning which were manifested prior to age twenty-two (22) or adequately develop the record with respect to that issue. As such, substantial evidence does not support the ALJ's findings at step three of the sequential evaluation process, and remand is therefore warranted.

## CONCLUSION

The Court's review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), Plaintiff's appeal will be granted, the decision of the Commissioner

will be vacated, and the case will be remanded to the Commissioner for further

proceedings.

A separate Order will be issued.


**Date**: November 20, 2014

United States District Judge